FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ 03 2006 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

ANDREW VILACHA,

                Plaintiff,

    -against-

JOHN E. POTTER, in his official capacity
as Postmaster General,

                Defendant.

-------------------------------------------------X

**REPORT AND RECOMMENDATION**
**03 CV 6286 (ERK) (LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff brings this *pro se* action alleging that defendant discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 et seq. Defendant moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for summary judgment under Fed. R. Civ. P. 56. The Honorable Edward R. Korman referred defendant's motion to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). As defendant has submitted documents outside of the pleadings, and plaintiff has received the requisite notice,[1] defendant's motion will be treated as one for summary judgment. For the following reasons, it is respectfully recommended that defendant's motion should be granted and plaintiff's complaint should be dismissed.

---

[1] Defendants provided plaintiff with the requisite "Notice to Pro Se Litigant Opposing Motion to Dismiss" L.R. 12.1, along with a copy of Local Civil Rule 56.2, setting forth plaintiff's obligations in opposing a motion for summary judgment.

## BACKGROUND

Plaintiff's complaint alleges that the Postal Service abolished his job assignment and prevented him from being considered for a specific mail handler assignment in violation of his rights under the ADEA. Plaintiff states: "[I] was denied a promotion, with high pay by the U.S.P.S. I was also denied a position by the Postal Service. In both promotion and position other employees were treated more favorably than me. Selected workers were only allowed to bid, and only selected workers were offered position[s] in my unit." Complaint at ¶ 8.

Plaintiff was employed by the Postal Service from January 25, 1969 to August 3, 2004, when plaintiff retired after approximately 35 years of service. Pl. Dep. Tr. at 8:20-24; 8:12-15. During the tenure of his employment, plaintiff held the position of mail handler ("MH"). Pl. Dep. Tr. at 8:25; 9:1-2; 9:16-18; 10; 4-6. Plaintiff's responsibilities as a MH were "[t]o give out the mail that came in, to load the truck, unload the truck and distribute the mail to whatever the location where it was going to or the personnel that it was going to." Pl. Dep. Tr. at 9:3-9.

There are two grades of MH positions where plaintiff worked at the Brooklyn Processing & Distribution Center ("P&DC"): Level 4 and Level 5. See Declaration of Albert Alvarez In Support of Defendant's Motion for Summary Judgment, dated November 15, 2005 ("Alvarez Decl.") at ¶ 4-5. MHs work in three shifts, called "Tours" over a 24 hour period and work five days a week. Each Tour lasts approximately eight hours, but the initial reporting times can be staggered throughout the Tour. Plaintiff worked the Tour 3 shift (4 p.m.-12:30 a.m.) at the P&DC. Alvarez Decl. at ¶ 3.

In December 2001, the plant manager conducted a study at the P&DC regarding systemic delays in mail processing and excessive requests for overtime. The study concluded that mail handlers at the P&DC were not being utilized efficiently. Alvarez Decl. at ¶ 7-10. In January 2002, the Postal Service's New York Metro Area ("Area") conducted a Labor Distribution Code 17 assessment (the

"LDC 17 review") regarding productivity at the P&DC which concluded that the P&DC was improperly staffed, primarily with respect to its mail handling operations. The LDC 17 review found that "work hours and staffing on each [T]our [were] disproportionate to the volumes that [were] processed on each [T]our"; that Tour 3's presorting operations had the opportunity to clear mail efficiently but that its productivity was among the lowest; that P&DC's overtime rates were "among the highest rates nationally and [were] driving the high [overtime] ratio; and that some of the P&DC's "productivity levels [were] substantially below the [New York Metro Area's] averages." Alvarez Decl. at ¶¶ 13-15.

The LDC 17 review recommended that P&DC reduce its MH work hours by almost 37,000 hours, the equivalent of twenty full-time positions, and that each category of MH operations reduce its staffing by a minimum of forty-six (46) employees. Alvarez Decl. at ¶ 16. This resulted in a major restructuring at the P&DC, and particularly affected the staffing of mail handlers: 141 mail handler positions were abolished–38 on Tour 1, 60 on Tour 2 and 43 on Tour 3. Alvarez Decl. at ¶ 22. Plaintiff's Tour 3 mail handler position was one of those abolished. However, an "abolishment" in the Postal Service means that a "management decision [has been made] to reduce the number of occupied duty assignment(s) in an established section and/or installation." Alvarez Decl. at ¶ 26. Although plaintiff's job assignment was abolished, he was reassigned to a different position at the same grade, salary and benefits. Alvarez Decl. at ¶ 43; Pl. Dep. Tr. at 21:8-16. At the time plaintiff's job was abolished, plaintiff was 54 years old. See U.S. Postal Service Information for Pre-Complaint Counseling (annexed as Exhibit 12 to defendant's Notice of Motion).

As part of the reassignment process, plaintiff had to apply to an open vacancy position or be assigned to a different job assignment by his employer. Dep. Tr. at 21:8-16; Alvarez Decl. at ¶ 44. A bid announcement (MH Vacancy 02-03M) was made available to all Level 4 Mail Handlers whose positions were abolished. Alvarez Decl. at ¶ 47; Pl. Dep. Tr. At 30:10:14. Although plaintiff would

have qualified, he explained in his deposition that he never submitted a bid for this vacancy because he "wasn't interested" in this duty assignment "most likely [because] it was the time, the days off, the assignment, the assignment itself, the location, the days off or the time, the time schedule." Pl. Dep. Tr. at 31:4-17. As a result, plaintiff was assigned to a different shift. The assignment that plaintiff wanted, and did not qualify for, was a Level 5 MH position that was made available under MH Vacancy 02-04M. Pl. Dep. Tr. at 25:13-25; 34:17-25. The crux of plaintiff's ADEA suit is that his job assignment was abolished and that he was deemed ineligible for a Level 5 MH position. Plaintiff's Complaint at ¶ 8.

Defendant denies that any of the employment actions that affected plaintiff were the result of discrimination. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum") at 2. Defendant argues that plaintiff's job assignment was abolished because the P&DC restructured its entire staff as a result of the LDC review and that the reorganization affected not just plaintiff, but 140 other employees at the same facility. In addition, defendant argues that plaintiff was not able to bid for the Level 5 MH Vacancy 02-04M assignment because he was a Level 4 employee. Defendant's Memorandum at 16. This assignment was a "closed bid" only available to employees with a grade level of 5. Alvarez Decl. at ¶¶ 49-51. The Postal Service's contract with its MHs obligated it to limit eligibility for new vacancies to the class of MHs whose assignments had been abolished. Id. In other words, mail handlers whose positions were abolished were given the opportunity to apply for positions *within the grade level they possessed before the restructuring*. Alvarez Decl. at ¶ 51. This ensured that both Level 4 and Level 5 mail handlers would keep their grade levels, albeit at different job assignments. Id. Defendant argues that because plaintiff was a Level 4 employee, he was ineligible for the Level 5 02-04M vacancy position. Id.

4

## PROCEDURAL HISTORY

On November 19, 2002, plaintiff filed an administrative age discrimination charge complaining that his "job was abolished and [he] was not allowed to bid for Level 5 jobs." See EEO Complaint of Discrimination in the Postal Service dated November 19, 2002 (annexed as Exhibit 21 to defendant's Notice of Motion). On April 15, 2003 an EEO manager notified plaintiff that his administrative charge was accepted for investigation. See Postal Service Acceptance of Complaint, dated April 15, 2003 (annexed as Exhibit 22 to defendant's Notice of Motion). Upon the completion of its investigation, the Postal Service issued a final decision ("Notice of Final Decision") finding that plaintiff had not been subject to unlawful discrimination. See Notice of Final Decision, dated August 25, 2003 (annexed as Exhibit 26 to defendant's Notice of Motion).

In its Notice of Final Decision, the Postal Service expressly advised plaintiff that a civil action must be filed in court within ninety (90) days of receipt of its decision if plaintiff did not appeal to the EEOC. See Id. On September 9, 2003, plaintiff acknowledged receipt of the Notice of Final Decision. See Certified Return Receipt Request (annexed as Exhibit 27 to defendant's Notice of Motion). On December 15, 2003, plaintiff filed the complaint in this action. See Plaintiff's Complaint (annexed as Exhibit 28 to defendant's Notice of Motion).

The defendant now moves to dismiss plaintiff's complaint as plaintiff failed to file his complaint within ninety days of receipt of the final administrative decision. In addition, defendant argues that even if this requirement had been met, plaintiff cannot establish a *prima facie* case of discrimination because he did not suffer an adverse employment action, and that defendant has articulated a legitimate, non-discriminatory reason for its actions. See Defendant's Memorandum. For the reasons discussed, I respectfully recommend that defendant's motion for summary judgment be granted and plaintiff's complaint should be dismissed as untimely.

## STANDARD OF REVIEW

A motion for summary judgment may be granted when a court "determines that there is no genuine issue of material fact to be tried." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and Celotex Corp. V. Catrett, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable juror could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). "The trial court's function in deciding such a motion is not to weigh evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denial of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In other words the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. V. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Moreover, "[t]he mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Where, as here, a party is proceeding *pro se*, the Court is obliged to "read [his] supporting

papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially true in the summary judgment context when a pro se plaintiff's claims are subject to final dismissal. See, Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

## DISCUSSION

Pursuant to the ADEA, a federal employee who believes that he has been discriminated against on the basis of his age may either proceed through the EEOC administrative process or, after giving thirty days' notice to the EEOC, proceed directly to federal court. See Stevens v. Department of Treasury, 500 U.S. 1, 5-6 (1991); see also Wrenn v. Secretary of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990); 29 U.S.C. § 633a(b)-(d); 29 C.F.R. § 1614.201(a). However, if an aggrieved employee chooses the administrative process, he becomes obliged to timely exhaust administrative remedies before he may pursue an ADEA claim in federal court. See Baber v. Runyon, No. 97 Civ. 4798, 1998 WL 912065, at 3 (S.D.N.Y. Dec. 30, 1998) (citing Wrenn, 918 F.2d at 1078); Tsai v. Helfer, 940 F. Supp. 597, 601 (S.D.N.Y.1996). In this case, plaintiff pursued the administrative process. The ADEA provides that a federal employee bringing a federal court claim under the ADEA must do so within ninety days of receipt of a final administrative decision regarding such claim, or 180 days from the date the employee filed the administrative complaint where no administrative decision was issued. See 29 C.F.R. §§ 1614.407(a)-(b) (2005).

The final administrative decision or the EEOC notice is frequently referred to as a "right-to-sue letter," see, e.g., Francis v. Elmsford School District, 442 F.3d 123, 126 (2d Cir. 2006); Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525 (2d Cir. 1996). To be timely, a Title VII or ADEA claim must be filed within ninety [90] days of the claimant's receipt of a right-to-sue letter from the EEOC

or applicable administrative agency. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149 (1984). Moreover, this Circuit has held that "[w]hile the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration[,] the court cannot extend the limitations period by even one day." ' Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir.1984) (quoting Rice v. New England College, 676 F.2d 9, 11 (1st Cir.1982)).

The Second Circuit's directive has been given full effect by district courts. See, e.g., Francis v. Elmsford School Dist., No. 04 Civ. 2687, 2005 WL 151924, at *5 (S.D.N.Y. Jan 25, 2005) (finding a complaint filed 6 or 7 days late was time barred), aff'd 442 F.3d 123 (2d Cir. 2006); Toolan v. Board of Educ. of City of New York, No. 02 Civ. 6989, 2003 WL 22015437, at *2 (S.D.N.Y. August 25, 2003) (dismissing *pro se* plaintiff's complaint because "although she was only one day late, she was still late"); Moscowitz v. Brown, 850 F. Supp. 1185, 1191 (S.D.N.Y. 1994) (dismissing pro se complaint filed one day late).

Here, the Postal Service issued its final decision denying plaintiff's ADEA claim on August 25, 2003. That same day, the Postal Service sent its decision by first class mail to plaintiff return receipt requested. In its decision, the Postal Service expressly advised plaintiff that a civil action must be filed within ninety (90) days if plaintiff did not appeal the Agency's decision to the EEOC. Plaintiff acknowledged receipt of the Postal Service's decision on September 9, 2003. As plaintiff did not pursue an EEOC appeal, he therefore had ninety days from his receipt of the Postal Service's final decision to file his suit in federal court. Plaintiff was therefore required to file his ADEA claim with this Court no later than December 9, 2003. However, plaintiff did not file his complaint until December

8

15, 2003, six days after the limitation period had passed.[2] In the absence of a recognized equitable consideration, plaintiff's failure to file his ADEA claim within the 90 day limitation period bars plaintiff from seeking relief in this Court.

As the ninety day limitation period is not jurisdictional, it is subject to equitable tolling. Francis v. Elmsford School District, 442 F.3d at 127. Equitable tolling is permissible, but only in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights. see Gibson v. New York City Police Dep't, 201 F.3d 431 (table) (2d Cir. 1999) ("[E]quitable relief is extended sparingly."); Ferrer v. Potter, 03 Civ. 9113, 2005 WL 1022439 at *7 (S.D.N.Y. May 3, 2005) (Peck, M.J.); Francis v. Elmsford Sch. Dist., 2005 WL 151924 at *4; Jenkins v. Potter, 271 F. Supp.2d 557, 563 (S.D.N.Y.2003) ( "Equitable tolling has been applied 'only sparingly' in private suits . . .") (citing Irwin v. Department of Veteran Affairs, 498 U.S. 89, 95 (1990)); Moore v. Potter, 217 F. Supp.2d 364, 373 (E.D.N.Y. Aug. 28, 2002) ("courts have permitted such [equitable] tolling 'only sparingly'"); Chalom v. Perkins, 97 Civ. 9505, 1998 WL 851610 at *5 (S.D.N.Y. Dec. 9, 1998).

The requirements for equitable tolling have been described in various ways in different cases, but invariably, plaintiff must demonstrate he was diligent in pursuing his claim and/or that defendant somehow misled him. See, e.g., Ferrer v. Potter, 2005 WL 1022439 at *7; Francis v. Elmsford Sch. Dist., 2005 WL 151924 at *8; Avillan v. Potter, 01 Civ. 1648, 2002 WL 252479 at *3 (S.D.N.Y. Feb. 21, 2002) ("Equity will not actually lift the procedural bar, however, unless the plaintiff shows that he (1) was unaware of or unable to meet his procedural obligations (2) because of affirmative misconduct on the part of the defendant."); Chalom v. Perkins, 1998 WL 851610 at *5 ("Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing

---

[2] Although plaintiff's complaint was filed on December 15, 2005, it is dated December 13, 2005. However, even if plaintiff filed the complaint on December 13, 2005, it would still be untimely.

9

deadline.").

"The burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff," and courts are "less forgiving in receiving late filings where the claimant failed to exercise due diligence in pursuing his legal rights." Avillan v. Potter, 2002 WL 252479 at *3 (internal citations omitted); see also Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002) ("[T]he burden of proving that tolling is appropriate rests on the plaintiff."); Ferrer v. Potter, 2005 WL 1022439 at *8; Lloyd v. Bear Stearns & Co., 99 Civ. 3323, 2004 WL 2848536 at *10 (S.D.N.Y. Dec. 9, 2004) ("The plaintiff bears the burden of 'demonstrating the appropriateness of equitable tolling.'") (citing Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)); Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 301 F. Supp.2d 259, 263 (S.D.N.Y. 2004) (same).

Nothing in the instant record demonstrates any affirmative misconduct by the defendant. Plaintiff was clearly aware of his procedural obligations as outlined in the Notice of Final Decision but failed to act diligently to file his complaint within ninety days after the EEOC decision. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin, 466 U.S. at 152. "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Id. (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)). Plaintiff failed to act diligently and cannot now invoke equitable principles to excuse that lack of diligence. See e.g., Zerilli-Edelglass v. N.Y. City Transit Authority, 333 F.3d 74, 91 (2d Cir. 2003) (citing South v. Saab, 28 F.3d 9, 12 (2d Cir. 1994). ("A plaintiff's failure to act diligently is not a reason to invoke equitable tolling").

Equitable tolling would be inappropriate in this case. There is no dispute regarding the exact date plaintiff received the Final Notice of Decision as plaintiff signed and dated the Return Receipt

Request on December 9th. Plaintiff argues in error that his "requirement to file [his] ADEA claim with the court was the 23rd of December and not December 9th as stated by the defendant." See Plaintiff's Affidavit/Affirmation in Opposition to Defendant's Motion at "A". Plaintiff is sadly mistaken. Equitable tolling is not appropriate in this situation and plaintiff's complaint is untimely. See, e.g., Manley v. N.Y. City Police Dep't, No. CV-05-679, 2005 WL 2664220, at *4 (E.D.N.Y. 2005) (finding the *pro se* plaintiff's excuse that he "lost track of time" insufficient to support application of equitable tolling to federal complaint filed one day late).

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion for summary judgment should be granted and this case should be dismissed in its entirety. The Court need not reach defendant's alternative basis for dismissal.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: November 3, 2006
Brooklyn, New York